UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
**FILED**
NOV 09 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-613-GWU

DAVID M. BROCK,              PLAINTIFF,

VS.         **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,       DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Case: 6:04-cv-00613-GWU Doc #: 7 Filed: 11/09/05 Page: 2 of 14 - Page ID#: 51

Case: 6:04-cv-00613-GWU Doc #: 7 Filed: 11/09/05 Page: 2 of 14 - Page ID#: 51

Brock

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

Brock

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

3

>pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

4

Brock

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

Brock

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

6

physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, David M. Brock, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of depression, anxiety, degenerative disc disease, mild chronic obstructive pulmonary disease, and post-traumatic arthritis of the left knee. (Tr. 17). Nevertheless, based in part on the testimony of a medical expert (ME) and a vocational expert (VE), the ALJ determined that Mr. Brock retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 20-3). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were limited to light level exertion, and also had the following non-exertional impairments. (Tr. 388). He: (1) could only occasionally push or pull with the left lower extremity; (2) could not kneel, climb, crouch, or have concentrated exposure to fumes, odors, dust, gases, or chemicals; and (3) would have a "seriously limited but not precluded" ability to deal with the public, deal with work stresses, and carry out detailed or complex instructions. (Tr. 388-9). His ability in other mental areas was at least "limited but satisfactory." (Id.). The VE responded that there were jobs that such a

7

person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 389).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mr. Brock alleged disability beginning January 9, 2002 due to a broken right hand, a bad left knee, lower back pain, nervousness, depression, and a broken jaw. (Tr. 68). At the administrative hearing, he described his knee problems as consisting mainly of a burning sensation, but stated that his low back pain was so severe that he was receiving Methadone from Dr. John Gilbert, a neurosurgeon. (Tr. 361-3). Dr. Gilbert had not placed any work restrictions, but another treating source, Dr. Yasser Nadim, had restricted him from doing any kneeling. (Tr. 363). He also had arthritis in his right hand from a previous injury and did not have a full range of motion in his first finger. (Tr. 364-5). Mr. Brock, additionally, described nervousness and depression, and indicated he was receiving counseling and medication from the local Comprehensive Care Center. (Tr. 366). He testified that he formerly had an opiate addiction problem, but this had been "in remission" for two years. (Tr. 368).

Medical evidence in the transcript shows that Mr. Brock was treated by Dr. Nadim beginning in January, 2002 for a fractured second metacarpal in the right hand. (Tr. 146-7). By March, Dr. Nadim reported that the fracture had healed nicely, and Mr. Brock had a good range of movement in the hand. (Tr. 142). His main

8

complaint now was discomfort and "giving way" of the left knee, which had been injured the previous May. (Id.). Dr. Nadim eventually performed two arthroscopic surgeries on the knee for a ruptured medial meniscus, with the second surgery taking place in September, 2002. (Tr. 131-40). Mr. Brock continued to complain of knee discomfort but, by January 30, 2003, was describing it as "minimal" and requested that he be allowed to go back to work at full duty. (Tr. 124). Dr. Nadim's office notes for February and March, 2003 show that the plaintiff was back working in his coal mining job, which involved kneeling (Tr. 122-3, 319-22), although at the administrative hearing, Mr. Brock strongly denied working after January, 2002 (Tr. 374-6).[1] Thereafter, Dr. Nadim repeatedly referred his patient to a pain management clinic, but he refused to go because of financial concerns. (Tr. 315). Mr. Brock complained of locking and giving way of the left knee in October, 2003, and Dr. Nadim obtained an MRI of the joint, which was normal. (Tr. 309-10). His examination showed a full range of motion and no abnormal laxity. (Tr. 309). He also obtained an MRI of the lumbosacral spine, which showed degenerative disc disease from L3 to S1, with a small bulging disc at L4-5. (Tr. 309, 311). Range of motion of the lumbar spine was limited. No functional restrictions are suggested.

---

[1] Additionally, there is an indication in the notes of Dr. Moises Langub, who was also prescribing medications to the plaintiff at this time, that he was "getting up tight at work" on May 21, 2002. (Tr. 179).

Brock

Other physicians also examined the plaintiff, but none put limitations on his activity that were clearly greater than found by the ALJ. Dr. A. Dahhan conducted a pulmonary function study in October, 2002, but this produced an FEV1 86 percent of the normal level, and the physician concluded that there were no objective findings of any respiratory impairments. (Tr. 212-13). Dr. Caesar Agtarap treated the plaintiff with pain medications from May to September, 2003 with his physical examinations showing tenderness of the left knee (but no effusion or crepitations), tenderness in the right wrist and of the lumbosacral spine, and a limited range of motion of lumbosacral spine (Tr. 201-9); he prescribed Percocet, and advised Mr. Brock not to drive or operate heavy machinery while taking the medication (Id.). Dr. Ronald Dubin, an orthopedist, examined the plaintiff in July, 2003, and concluded that there would be no disability of the hand, but he would allow the plaintiff a 5 percent permanent disability under AMA standards for his left knee problem and a 5 percent permanent disability for his low back injury; the doctor opined that the plaintiff could not return to his normal employment of working in an underground coal mine, and that he would be restricted to "sedentary vs. semi sedentary occupations regarding his right knee as well as back." (Tr. 199). Neither Dr. John Gilbert, who examined the plaintiff on one occasion, in December, 2003 and also found normal sensation and reflexes, and interpreted the MRI obtained by Dr. Nadim showing degenerative changes and the "small bulge" at L4-5 (Tr. 289) nor his colleague Dr.

10

Greg Wheeler, who did not make any additional findings, but apparently interpreted the MRI as showing a ruptured disc (Tr. 287) listed any functional restrictions.

The ALJ's functional capacity findings are consistent with those of Dr. John Rawlings, a state agency physician who reviewed the record as of October 28, 2002 (Tr. 227-35), except in the area of manipulations with the right hand, which Dr. Rawlings had indicated should be limited to an occasional basis. The ALJ relied on the findings of Dr. Dubin, as well as the plaintiff's apparent statements to Dr. Nadim that his hand was no longer troubling him, and did not accept any hand-related restrictions. A subsequent state agency reviewer, Dr. Kenneth Phillips, reviewed the record in March, 2003, and found that the plaintiff could perform medium level exertion, and would not have any manipulative or environmental limitations. (Tr. 237-46). The ALJ provided greater limitations, but Dr. Phillips' opinion does support his finding. The only possible inconsistent opinion from any medical source would be Dr. Dubin's commentary that Mr. Brock be limited to sedentary or "semi sedentary" work. However, it is not clear what the physician meant by "semi sedentary," and this could reasonably have been interpreted to be consistent with "light" level exertion. Therefore, the hypothetical physical restrictions were supported by substantial evidence.

As far as Brock's <u>mental</u> condition is concerned, a brief record from the Trillium Center shows that the plaintiff was admitted between May 14 and May 18, 2002 for treatment of an opiate dependency. (Tr. 177). The physician noted that

11

this was the plaintiff's fifth admission for the same problem, and in the past he never followed recommendations and "never got fully invested in developing a recovery plan for himself." (Id.). On this occasion, he stated that he had changed his attitude and agreed to residential treatment but, after four days, decided to leave against medical advice "so it was the same old story for the fifth time." (Id.).

Dr. Kevin Eggerman, a psychiatrist, examined the plaintiff in October, 2002. The plaintiff described a history of opioid abuse, but reported that he was now "compliant" and did not abuse his medications. (Tr. 222). He reported generalized anxiety symptoms, and superficially endorsed depression. (Id.). He was currently taking Xanax. He described his educational history as always being in regular classes, and that he had obtained his GED. (Tr. 223). Dr. Eggerman noted only mild anxiety, with no affective distress, fair concentration, and no depression. (Tr. 224). He diagnosed opioid dependence in remission and a generalized anxiety disorder, with a Global Assessment of Functioning (GAF) score of 60 to 65 currently with a highest score for the past year of 65 to 70. (Tr. 225). This would reflect "moderate" to "mild" symptoms. Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition-Text Revision) (DSM-IV-TR), p. 34. He felt that Mr. Brock would have a "fair" ability to understand and remember moderately complex or complex instructions, relate to co-workers and supervisors, persist on tasks, and tolerate work-related stress. (Tr. 226). The term "fair" was not defined.

12

Reba Moore, a psychologist, performed a consultative examination of the plaintiff on July 2, 2003, and administered IQ testing which showed a full-scale score of 74, which was in the borderline range and felt to be an accurate estimate of Mr. Brock's "current" functioning. (Tr. 190). Achievement testing showed high school level reading and fifth grade level arithmetic. (Tr. 191). Ms. Moore diagnosed "major depressive episodes, superimposed on a dysthymic disorder," and borderline intellectual functioning. (Tr. 194). She assigned a Global Assessment of Functioning (GAF) score of 60, which would reflect moderate symptoms per the DSM-IV-TR. However, she also completed a functional capacity form indicating that Mr. Brock would have a "seriously limited but not precluded" ability to relate to co-workers, deal with the public, deal with work stresses, maintain attention and concentration, and understand, remember, and carry out complex job instructions. (Tr. 195-6).

State agency psychologists who reviewed the record concluded that the plaintiff did not even have a "severe" mental impairment. (Tr. 248, 263).

Subsequently, Mr. Brock was seen in the summer of 2003 by the local Comprehensive Care Center, and given a diagnosis of anxiety disorder with a GAF of 55 to 60. (Tr. 297, 305). Once again, this would represent moderate symptoms. No specific functional restrictions are given, and the plaintiff initially reported a favorable response to medication (i.e., Paxil). (Tr. 300). On his last recorded visit, in November, 2003, he complained of increased anxiety and nervousness, but no

13

Brock

additional restrictions are given. His medications at the time were Paxil, Trazodone, and Atarax. (Tr. 222).

The ALJ sought testimony from an ME, Dr. Suzann O'Koon. Dr. O'Koon noted that Reba Moore had given only specific assessment of functioning, but she would not agree that the record showed that Mr. Brock had a problem getting along with co-workers, and described his ability in that area as "limited but satisfactory." (Tr. 377-9). She also opined that the plaintiff would have a fair ability to maintain attention and concentration for simple tasks, due to his relatively high GAF scores, and the fact that his opiate dependence was said to be in remission. (Tr. 379-80).

As a result, the ALJ's hypothetical mental factors were supported by expert testimony, and good reasons were identified for not following all of the examiner's limitations. Accordingly, this portion of the hypothetical question was also supported by substantial evidence.

The decision will be affirmed.

This the ___9___ day of November, 2005.

G. WIX UNTHANK
SENIOR JUDGE

14